┌─────────────────────────────────────────────────────────────┐
│ **NOT FOR PUBLICATION WITHOUT THE**                          │
│ **APPROVAL OF THE APPELLATE DIVISION**                       │
│                                                             │
│ This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the │
│ internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3. │
└─────────────────────────────────────────────────────────────┘

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3458-19

IN THE MATTER OF
COUNTY OF ESSEX,

    Petitioner-Appellant,

and

ESSEX COUNTY PBA
LOCAL 382,

    Respondent-Respondent,

─────────────────────────────

FOP LODGE 106, PBA LOCAL 183
and PBA LOCAL 183A,

    Intervenors-Respondents.

─────────────────────────────

        Argued March 24, 2021 – Decided April 20, 2021

        Before Judges Fuentes and Rose.

        On appeal from the New Jersey Public Employment
        Relations Commission, PERC No. 2020-40.

        Angelo J. Genova argued the cause for appellant
        (Genova Burns, LLC, attorneys; Angelo J. Genova and

Joseph M. Hannon, of counsel and on the briefs; Leonard S. Spinelli, on the briefs).

Frank C. Kanther, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli, General Counsel, attorney; Frank C. Kanther, on the statement in lieu of brief).

Albert J. Seibert argued the cause for respondent Essex County PBA Local 382 (Law Offices of Steven A. Verano, PC, attorneys; Joseph P. Slawinski, of counsel and on the joint brief).

C. Elston & Associates, LLC, attorneys for intervenors-respondents FOP Lodge 106 (Catherine M. Elston, of counsel and on the joint brief).

Law Offices of Nicholas J. Palma, Esq., PC, attorneys for intervenors-respondents PBA Local 183 and PBA Local 183A (Valerie Palma DeLuisi, of counsel and on the joint brief).

PER CURIAM

The County of Essex appeals from a February 20, 2020 final agency decision of the Public Employment Relations Commission (PERC) that denied, in part, the County's petition to restrain arbitration of a grievance filed by the Essex County PBA Local 382 (PBA 382). We affirm.

PBA 382 represents the County's correction officers below the rank of sergeant. The County and PBA 382 were parties to a collective negotiations agreement (CNA) that was in effect from January 1, 2014 through December 31,

2017.[1]  The CNA contained a grievance procedure that culminated in binding arbitration.  The CNA also addressed the officers' health insurance benefits.  Sections 1 and 5 of Article 21 provided, in pertinent part:

> 1.  The existing Hospitalization, Medical Surgical and Major Medical Insurance benefits shall be paid for by the County except as set forth below.  The County reserves the right to select the insurance carrier who shall provide such benefits, as long as the benefits are not less than those now provided by the County.
>
>     . . . .
>
> 5.  The County may change insurance carriers or be self-insured, so long as it does not reduce existing benefits.

The County renews its health insurance provider contract annually.  For the 2016 calendar year, Aetna provided health benefits to the County's twenty-six bargaining units.  During 2016, the County anticipated a rise in Aetna's costs for the following calendar year and, as such, "began soliciting quotes from other carriers including the State Health Benefits Program" (SHBP).  The County engaged in "Labor Roundtable" discussions with the bargaining unit's representatives in an effort to meet the SHBP's "uniformity" requirement "that all active and retired employees of a public entity be enrolled in the SHBP."

---

[1]  The parties have not provided the CNA on appeal, but the pertinent provisions are quoted in PERC's February 20, 2020 written decision.

Ultimately, PBA 382 and three other bargaining units disapproved the change in providers from Aetna to SHBP.[2] The remaining twenty-two bargaining units agreed to enrollment. In September 2016, the resolution to enter the SHBP for the 2017 calendar year was approved, effective January 1, 2017.

In January 2017, PBA 382 filed a grievance and demand for arbitration with PERC. PBA 382 asserted the County violated the CNA by unilaterally changing health insurance carriers, resulting in a reduction in the level of its members' health benefits. The grievance also requested stipends for its members who waived the County's health coverage. Thereafter, the County filed a scope-of-negotiations petition, seeking to restrain arbitration of the grievance.[3]

On February 20, 2020, PERC issued a comprehensive written decision on the scope petition, denying in part, and granting in part, the County's application. Citing our Supreme Court's decision in <u>Ridgefield Park Education Ass'n v.</u>

_____

[2] PBA Local 183, on behalf of the County's Sheriff's officers; PBA Local 183A, on behalf of the County's Sheriff's superior officers; and FOP Lodge 106, on behalf of the County's superior correction officers, also opposed the change in providers. We granted the motions to intervene as of right filed by those bargaining units (collectively, intervenors). <u>See</u> <u>R.</u> 4:33-1. PBA 382 and the intervenors filed a joint responding brief on this appeal.

[3] The parties have not provided the grievance or PBA's demand for arbitration on appeal.

Ridgefield Park Board of Education, 78 N.J. 144, 154 (1978), PERC aptly recognized its "narrow" jurisdiction. As PERC noted, the agency does "not consider the contractual merits of the grievance or any contractual defenses the employer may have." PERC then squarely addressed the issues raised in view of the applicable legal principles.

PERC initially determined that portion of the grievance pertaining to stipends was preempted by statute and therefore not arbitrable. The County does not appeal from that determination. Relevant here, however, PERC denied the County's scope petition "to the extent the grievance challenge[d] any other alleged reductions in the level of . . . PBA [382]'s health benefits caused by the County's unilateral change to the SHBP." Canvassing the governing law, PERC elaborated:

> The level of health benefits is generally negotiable absent a preemptive statute or regulation and a grievance contesting a change in a negotiated level of benefits is generally negotiable. (Citations omitted). Therefore, an employer's selection or change of insurance carrier becomes mandatorily negotiable if the change would affect the level of benefits or administration of the plan. (Citations omitted).
>
> An arbitrator may determine whether the parties made an agreement over the level of health benefits and whether the employer violated that agreement, even if the changed benefits were a result of legislative or regulatory changes to the SHBP. (Citations omitted).

> An arbitrator cannot order the County to continue a level of benefits through the SHBP that the [State Health Benefit's Commission] (SHBC) has not authorized. (Citations omitted). However, no statute or regulation requires that a local employer participate in the SHBP. Local employers can withdraw from the SHBP at any time consistent with their obligations under existing collective negotiations agreements. (Citations omitted).

Against that legal backdrop, PERC correctly recognized the parties in the present matter "agreed on a level of health benefits" and it was within the County's discretion to contract with a health insurance provider "so long as the chosen provider offered plans consistent with the negotiated level of benefits." PERC observed: "The County was not mandated to join the SHBP, but voluntarily chose to change health insurance carriers and consequently potentially violate the CNA's health benefits provisions." Moreover, the County acknowledged "it unilaterally changed carriers for some negotiations units," including PBA 382, which did not agree to that change.

Notably, PERC found "if the arbitrator determines that the transition to the SHBP also resulted in changes to the level of health benefits that the County agreed to in its CNA with . . . PBA [382], the County cannot use the SHBP's uniformity rules as a shield to claim immunity from an arbitrator's remedy." In reaching its decision, PERC analogized several of its prior decisions that

6

"consistently held" an employer's concerns about the "hypothetical arbitrator's remedy . . . cannot preclude arbitration over a negotiable health benefits issue."

PERC also cited its "policy of declining to consider before arbitration what remedies may be appropriate or enforceable if an arbitrator were to find a contractual violation." In that context, PERC concluded a party can challenge whether an award is authorized under the contract or conflicts "with the public interest, welfare, and other pertinent statutory criteria" after arbitration. This appeal followed.

On appeal, the County argues PERC erred and the grievance, in its entirety, should be restrained from arbitration. The County contends PERC's decision was arbitrary, capricious, and unreasonable because it subverted the SHBP's uniformity requirement and undermined the County's managerial prerogative to change benefit providers. The County claims PERC's decision therefore places the County and the remaining twenty-two bargaining units in a vulnerable position because they face both the prospect of losing the preferred health benefits under the SHBP and increased costs under another plan. The County also contends the grievance is not mandatorily negotiable because the change from the self-insured Aetna plan to the SHBP does not negatively affect the terms and conditions of employment, such as the level of benefits offered.

7

Our scope of review of PERC's decision is limited. See e.g., In re County of Atlantic, 445 N.J. Super. 1, 11 (App. Div. 2016). "In the absence of constitutional concerns or countervailing expressions of legislative intent, we apply a deferential standard of review to determinations made by PERC." City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 567 (1998). That standard is particularly germane here, where the Legislature has explicitly authorized PERC "upon the request of any public employer or majority representative" to determine whether a "matter in dispute is within the scope of collective negotiations." N.J.S.A. 34:13A-5.4(d); see also Borough of Keyport v. Int'l Union of Operating Eng'rs, 222 N.J. 314, 351 (2015) (Albin, J., dissenting) (recognizing "PERC is a specialized administrative agency designated by statute to interpret, implement, and enforce the [Employer-Employee Relations Act]," N.J.S.A. 34:13A-1 to -49).

When a party appeals a scope-of-negotiations determination, we review PERC's final decision under a "'thoroughly settled'" standard. Jersey City Police Officers Benevolent Ass'n, 154 N.J. at 568 (quoting In re Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. 322, 329 (1989)). PERC's determination must be upheld unless the party appealing it clearly demonstrates that it is "'arbitrary or capricious.'" Ibid. "[T]he test is not whether an appellate court would come

to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985). Accordingly, we will not disturb an agency determination unless it was arbitrary, capricious, or unreasonable, its findings lacked support in the evidence, or it violated the legislative grant of authority governing the agency. In re Herrmann, 192 N.J. 19, 27-28 (2007).

Applying these well-established legal principles, we discern no basis to disturb PERC's well-reasoned decision and affirm substantially for the reasons articulated therein. In doing so, we determine PERC's decision was not arbitrary, capricious, or unreasonable. We add these remarks.

As PERC correctly determined, the County's change in health care providers is mandatorily negotiable here, where the parties' CNA expressly provided that "[t]he County may change insurance carriers or be self-insured, so long as it does not reduce existing benefits." PERC did not however, determine the County effected a change in that level, thereby violating the CNA. That decision falls within the scope of the arbitrator's duties, even if the changed benefits resulted from legislative or regulatory changes to the SHBP.

Although in <u>Borough of East Rutherford v. East Rutherford PBA Local 275</u>, 213 N.J. 190 (2013), our Supreme Court ultimately decided the merits of an arbitration award, its rationale nonetheless is instructive here. In that case, the Borough and the PBA were parties to a four-year collectively bargaining agreement (CBA). <u>Id.</u> at 193. The Borough contracted with the SHBP for health insurance benefits. <u>Ibid.</u> The CBA stipulated employees would pay five dollars in co-payment, but two years after the CBA became effective the co-payment was increased to ten dollars. <u>Ibid.</u> The PBA filed a grievance and demanded arbitration. <u>Id.</u> at 196. The Borough petitioned PERC for a scope-of-negotiations determination, contending arbitration of the alleged violation of the CBA "was preempted by statutory provisions governing the SHBP." <u>Ibid.</u>

PERC denied the Borough's petition, reasoning that:

> [t]o restrain arbitration, we would have to first conclude that the PBA is not entitled to pursue its claim that the Borough was obligated to maintain a contractual level of benefits. Such a holding would be a departure from well-established case law. Purchasing insurance from the SHBP does not insulate an employer from enforcement of an agreement over a level of health benefits. Absent a preemptive statute or regulation not present here, an employer must reconcile its contractual obligations with its choice of health insurance providers.
>
> [<u>Id.</u> at 197.]

10

The Court ultimately upheld the arbitrator's award, concluding

> The framework for reviewing a public-sector arbitration award accounts for the interplay between the SHBP and the CBA by requiring a reviewing court to determine whether the arbitration award actually causes direct contradiction with law or public policy. [N.J. Tpk. Auth. v. Local 196, I.F.P.T.E., 190 N.J. 283, 293-94 (2007)]. We fail to see that this arbitration award met the demanding standard of a direct conflict between law and public policy on the one hand and the award's make-whole remedy on the other. Employees remained obligated under the award to adhere to the increased co-payment amount of $10.00 for each doctor's office visit.
>
> [Id. at 207.]

Although the County did not address Borough of East Rutherford in its merits brief, during oral argument before us, the County attempted to distinguish the Court's decision because it did not "address the meaning or effect of the 2010 amendment" to the SHBP. Id. at 207-08 (citing L. 2010, c. 2, § 8). Nor did the Court address the 2011 amendment to the SHBP, which required employee contributions for health benefits based on the employee's base salary. See L. 2011, c. 78. Because the 2011 amendment "required [employees] to contribute toward health benefits" the County argued "the Legislature has set forth a clear public policy that health insurance contributions are mandatory and cannot be negotiated away unless the employer agrees." The County's argument is misplaced.

The merits of the County's claimed violation of the CNA were not at issue before PERC. Instead, PERC's inquiry only concerned whether the matter in dispute was within the scope of the parties' collective negotiations and therefore may be submitted to an arbitrator for a determination on the merits. See Ridgefield Park Educ. Ass'n., 78 N.J. at 154. It is PBA 382's allegation that the County "failed to maintain a contractual level of benefits" that is arbitrable. Whether PBA 382 will succeed on that claim is within the arbitrator's purview.

Moreover, as PERC correctly concluded, the County was not required to select the SHBP as its health care provider. In that regard, PERC's decision is consonant with its earlier decision in Borough of East Rutherford, which the Court cited with approval. 213 N.J. at 197. Here there is no "direct contradiction with law or public policy," id. at 207, largely because the County's arguments are premised on a hypothetical arbitration award. We therefore discern no error in PERC's decision that the County's public policy argument is premature.

To the extent not specifically addressed, the County's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12